NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAYNORAL ANDREW JACKSON,          :
a/k/a JAMES DAVIS,                :
                                  :    Civil Action No. 07-4121 (SDW)
              Plaintiff,          :
                                  :
       v.                         :    **OPINION**
                                  :
GEORGE HAYMAN, et al.,            :
                                  :
              Defendants.         :

**APPEARANCES:**

Plaintiff pro se
Saynoral Andrew Jackson
601 Laurel Point Circle
Salisbury, NC 28147

**WIGENTON,** District Judge

   Plaintiff Saynoral Andrew Jackson, also known as James Davis, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence,[1] the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

_____

   [1] Plaintiff is not presently a "prisoner" as defined by 28 U.S.C. § 1915(h).  Accordingly, those subsections of § 1915 applicable to prisoners do not apply to Plaintiff.

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B).

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

On or about April 16, 1999, Plaintiff was sentenced to a ten-year prison term by the Honorable John T. McNeill, III, Superior Court Judge, Camden County, New Jersey.  On Jan. 23, 2004, while serving that sentence, Plaintiff escaped from a halfway house.

Plaintiff was later apprehended in New York in an unrelated matter and sentenced there to a 3-year term of imprisonment. While serving the New York sentence, Plaintiff entered into a plea agreement with respect to the New Jersey escape charge.  At the plea hearing, Judge McNeill gave Plaintiff assurance that he would be sentenced in accordance with the plea agreement that Plaintiff's sentence on the escape charge would run concurrently with his sentence in New York and his 1999 sentence in New Jersey.  Plaintiff contends that the plea agreement included an agreement that all three sentences would begin to run concurrently on August 30, 2004, the date of the plea hearing. Plaintiff agreed to be sentenced in absentia.  On October 28, 2004, Plaintiff was sentenced in absentia.  Plaintiff states that

the sentence as imposed did not accurately reflect the agreement that both the New Jersey sentences would begin to run as of August 30, 2004, concurrently with the New York sentence he was then serving.

On March 15, 2006, Plaintiff was paroled by New York State and returned to the custody of the New Jersey Department of Corrections to serve the 1999 sentence and the 2004 sentence for the escape conviction.  At that time, Plaintiff learned that the New Jersey Department of Corrections would not give Plaintiff credit against the 1999 sentence for the time served in the custody of New York authorities after August 30, 2004.  Plaintiff contends that Commissioner Hayman, through Cindy Ford, erroneously calculated Plaintiff's maximum expiration on the 1999 sentence as being January 13, 2008;[2] Plaintiff contends that under the terms of the plea agreement, his 1999 sentence expired in October 2005 and that his escape sentence expired in April 2006.

Plaintiff appealed the decision of the Department of Corrections to the Superior Court of New Jersey, Appellate Division, which issued a decision on March 14, 2007.  See Davis v. Department of Corrections, 2007 WL 750365 (N.J. Super. App.

---

[2] This date apparently was based upon the withholding of certain good-time credits and the addition of 784 days "escape time" to the 1999 sentence.

3

Div.), underline certif. denied, 192 N.J. 296 (N.J. 2007).  The Appellate

Division held, in pertinent part:

> Davis raises the following contentions for our
> consideration: ...  3) the failure of the DOC to
> properly compute his sentence has resulted in his being
> incarcerated beyond the maximum expiration date of both
> New Jersey sentences, in contravention of his right to
> due process and to be free of cruel and unusual
> punishment.
>
> ...
>
> As the DOC correctly found, Davis's three-year
> sentence for escape was absorbed into the longer
> sentence imposed in 1999 and, therefore, the 1999
> sentence is the controlling sentence for purposes of
> determining Davis's maximum release date.  The record
> does not support Davis's contention that the DOC's
> determination impermissibly supersedes a court order
> mandating that the 1999 sentence run concurrent with
> the New York sentence.  The judgment of conviction
> entered in 2004 does not state that the 1999 sentence
> is to run concurrently with Davis's New York sentence.
> Moreover, the judgment of conviction entered in 1999
> was never explicitly amended or modified to require
> that the sentences imposed pursuant to that judgment
> were to run concurrent with any other sentence.
>
> Furthermore, the DOC correctly determined that
> Davis is not entitled to credit against the 1999
> sentence for the time he spent serving his New York
> sentence.  Davis's service of the 1999 sentence was
> suspended when he escaped from the halfway house.  ...
> Accordingly, Davis's service of the 1999 sentence did
> not commence again until he was returned to DOC custody
> on March 15, 2006.
>
> Davis argues, however, that he should be given
> credit for the time he served in New York because his
> three-year sentence for escape runs concurrently with
> the 1999 New Jersey sentence and the 2004 New York
> sentence.  We disagree.  The 2004 judgment of
> conviction does not explicitly provide for such
> credits.  The judgment merely provides that the 2004
> New Jersey sentence would run concurrently with the New

York sentence and the previously imposed New Jersey sentence.

Davis's 2004 New Jersey sentence was, in fact, served concurrently with those other sentences. The time served in New York was credited against the 2004 New Jersey sentence. Furthermore, after Davis was returned to DOC custody on March 15, 2 006, the 2004 New Jersey sentence was served concurrently with the 1999 sentence, until Davis reached the "max date" on the 2004 New Jersey sentence, which occurred on or about August 27, 2007.

Davis additionally argues that the DOC erred by failing to grant him work credits earned while he served his New York sentence. ... However, Davis was not entitled to credits against the 1999 sentence because, according to the 1999 judgment of conviction, that sentence did not run concurrent with the New York sentence.

Davis further contends that he would not have pled guilty to the escape charge if he thought that the time served in New York would only be applied to the escape sentence and not the sentences imposed in 1999 for robbery. However, the plea agreement does not state that the time served in New York would be credited against his 1999 sentence. The plea agreement merely indicates that the 2004 New Jersey sentence would be concurrent with the New York sentence and the previously imposed New Jersey sentences. The discussion at the plea hearing is consistent with the plain language of the agreement. Moreover, as we have stated, the 2004 sentence was, in fact, served concurrently with those other sentences.

Although we are convinced that the DOC correctly calculated Davis's sentence based on the plain language of the judgments of conviction, our decision is not meant to preclude Davis from seeking relief in the trial court, with notice to the prosecutor, based on his claim that it was his understanding when he entered his plea that the time served in New York would be applied not only to his 2004 sentence but also to his 1999 sentence. ...

2007 WL 750365 *2-4.

5

Following the suggestion of the Appellate Division, Plaintiff returned to the trial court.  At a hearing on July 27, 2007, Judge McNeill conceded that the terms of Plaintiff's plea agreement required that the 1999 sentence be run concurrently with the New York sentence and that Plaintiff was entitled to receive credit against his 1999 New Jersey sentence for the time served in New York from August 30, 2004 through March 15, 2006.  Plaintiff alleges that Judge McNeill took judicial notice that Plaintiff had been imprisoned one year and 6 months beyond his maximum release date and directed that he be released "immediately."

Plaintiff alleges that, contrary to Judge McNeill's order, defendant administrator Mike Power refused to release Plaintiff until August 8, 2007.

Plaintiff seeks compensatory and punitive damages for his allegedly wrongful confinement from April 2006 until August 8, 2007.  He names as defendants the New Jersey Department of Corrections, Judge John T. McNeill, III, Commissioner George Hayman, Administrator Mike Power, Administrative Analyst Cindy Ford, and John Does 1 to 100.

II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary

relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint must plead facts sufficient at least to "suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  See also Morse v. Lower Merion School Dist., 132 F.3d at 906 (a court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions").

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  <u>ANALYSIS</u>

A.  <u>Claims against Judge John T. McNeill, III</u>

Plaintiff contends that Judge McNeill violated his constitutional right to due process and subjected him to cruel and unusual punishment when he failed to properly document the plea agreement in the 2004 judgment.

As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official

9

capacities) from suit for monetary damages under the doctrine of judicial immunity.  See Mireles v. Waco, 502 U.S. 9, 9 (1991). Judicial immunity can be overcome only for actions not taken in a judicial capacity, id., or for actions taken in a complete absence of all jurisdiction, 502 U.S. at 11-12.  Allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  See Forrester v. White, 484 U.S. 219, 227 (1988).

The action challenged here, the failure to accurately document the sentence, was undertaken in Judge McNeill's judicial capacity.  Accordingly, the claims against Judge McNeill must be dismissed with prejudice.

B.   Claims against the New Jersey Department of Corrections

Plaintiff alleges that the New Jersey Department of Corrections violated his due process rights and subjected him to cruel and unusual punishment when it violated the terms of his plea agreement and/or failed to contact the sentencing court to determine the terms of the plea agreement.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

10

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections and state prison are arms of the state for Eleventh Amendment purposes and are not persons under § 1983).

For the foregoing reasons, all damages claims against the New Jersey Department of Corrections must be dismissed with prejudice.

C.   Claim Challenging the Calculation of 1999/2004 Sentences

Plaintiff claims that Defendants Commissioner George Hayman, Administrator Mike Power, Administrative Analyst Cindy Ford, and John Does 1 to 100 violated his due process and Eighth Amendment rights by imprisoning him beyond the term agreed to in his 2004 plea agreement, by failing to contact the sentencing court to ascertain the terms of the plea agreement, and, specifically with respect to Defendant Mike Power, continuing to imprison him after Judge McNeill ordered his immediate release.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).

The Court of Appeals for the Third Circuit has held that imprisonment "beyond one's term" may give rise to a claim for "cruel and unusual punishment" under the Eighth Amendment.  See Sample v. Diecks, 885 F.2d 1099, 1107-12 (3d Cir. 1989).  The Court first held that there could be "no doubt" that imprisonment

"beyond one's term" constitutes punishment within the meaning of the Eighth Amendment.  885 F.2d at 1108 (citing Hutto v. Finney, 437 U.S. 678, 685 (1978) and Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985), cert. denied, 478 U.S. 1020 (1986)).  The Court then proceeded to evaluate the circumstances under which incarceration beyond one's term constitutes "cruel and unusual" punishment.

> One class of "unnecessary and wanton" wrongs, and the one most relevant here, is those wrongs "'totally without penological justification.'"
>
> ...
>
> A harm could be thought of as penologically justified in another sense, however.  The administration of a system of punishment entails an unavoidable risk of error.  In the case of punishment through imprisonment, those errors may result in harms to inmates.  Elimination of the risk of error in many instances would be either literally impossible or unfeasible because prohibitively costly.  Thus unforeseeable accidents or inadvertent mistakes are a necessary cost of any prison system; they therefore are not "repugnant to the conscience of mankind," and do not violate the eighth amendment.
>
> The degree to which a harm is "unnecessary" in the sense of being unjustified by the exigencies of prison administration will affect the state-of-mind requirement a plaintiff must meet to demonstrate that a particular prison official violated the eighth amendment.  ...
>
> ... Accordingly, we hold that there can be no eighth amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty.  ...
>
> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official

13

had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.  Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight.  Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

Among the circumstances relevant to a determination of whether the requisite attitude was present are the scope of the official's duties and the role he or she has played in the everyday life of the prison.  Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it.  A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter.  On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

Sample, 885 F.2d at 1108-10 (citations omitted).

The Court of Appeals for the Third Circuit has also held that detention beyond one's term may give rise to a claim for deprivation of liberty without due process under the Fourteenth Amendment if "a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest." Sample, 885 F.2d at 1114.  Applying the

14

balancing test of <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)
to determine what process is due a prisoner facing detention
beyond his term, the Court held, "procedural due process requires
that an inmate with a challenge to the calculation of his release
date promptly be listened to by someone having authority to
decide the challenge or pass it on for further review and
decision."  <u>Sample</u>, 885 F.2d at 1115.  <u>See also</u> <u>Haygood v.</u>
<u>Younger</u>, 769 F.2d at 1356 ("due process in this case required the
state to provide Haygood with a meaningful hearing at a
meaningful time").

Here, however, the Superior Court of New Jersey, Appellate
Division, has held that the Department of Corrections correctly
calculated Plaintiff's sentence.  That holding is entitled to
deference here.  Thus, as explained below, Plaintiff cannot
establish that he was held beyond his term, in violation of his
constitutional rights, during the period before Judge McNeill
amended the judgment of conviction on July 27, 2007.

Under 28 U.S.C. § 1738, the Full Faith and Credit Act, the
rulings of state courts "shall have the same full faith and
credit in every court within the United States ... as they have
by law or usage in the courts of such state ... from which they
are taken."  A finding in a prior criminal proceeding may estop
an individual from litigating the same issue in a subsequent
civil proceeding.  <u>James v. Heritage Valley Federal Credit Union</u>,

15

197 Fed.Appx. 102, 105 (3d Cir. 2006) (citing Emich Motors Corp. v. Gen. Motors Corp., 340 U.S. 558, 568-69 (1951)).  In determining the preclusive effect of a state court judgment, such as the judgment of the Appellate Division in Davis, above, this Court must apply the collateral estoppel law of the rendering state, here, New Jersey.  See Delaware River Port Authority v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002).

> In New Jersey, when a judgment of a court of competent jurisdiction determines a question in issue, the judgment estops the parties and privies from relitigating the same issue in a subsequent proceeding. Such a determination is conclusive on either the same or a different claim.
>
> New Jersey courts apply a five-pronged test to determine whether collateral estoppel should bar relitigation of an issue:  (1) the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.

Id. (citations and footnotes omitted).

Before the Appellate Division, Plaintiff litigated the issue of the accuracy of the Department of Corrections' calculation of his maximum release date as well as the issue whether that calculation resulted in his being incarcerated beyond his term in violation of his rights to due process and to be free of cruel and unusual punishment.  The Appellate Division found against him in a proceeding where determination of those issues was essential

16

to the judgment.  Thus, insofar as Plaintiff challenges behavior prior to the date of Judge McNeill's order for immediate release, the doctrine of collateral estoppel bars relitigation of those issues here.  The claims challenging the constitutionality of Plaintiff's confinement prior to July 27, 2007, must be dismissed as legally frivolous.[3]

Following the suggestion of the Appellate Division, however, Plaintiff returned to the trial court and obtained an amendment of the relevant judgment as well as an order for his immediate release on July 27, 2007.  Plaintiff alleges in the Complaint here that, "Despite Judge McNeill's order, administrator Mike Power refused to release plaintiff immediately and held plaintiff approx. 2 weeks after the issuance of the court's July 27, 2007 order."  (Complaint, ¶ 19.)  The allegations of the Complaint are sufficient to permit a due process and Eighth Amendment claim to proceed as against Defendant Administrator Mike Power for Plaintiff's confinement after the issuance of Judge McNeill's order on July 27, 2007.

---

[3] Similarly, as the Appellate Division held that there was no error in the calculation of Plaintiff's sentence, there can be no liability for failing to contact the sentencing court or for failing to establish policies or procedures to address Plaintiff's claim of unlawful detention beyond his term. Corrections officials have no duty to act as a prisoner's advocate in petitioning a trial court to amend a judgment of conviction.

17

D.   <u>State Law Claims</u>

Plaintiff alleges without elaboration that the actions of the named defendants violated his rights under Article I of the New Jersey Constitution.

Article I, Paragraph 1, of the New Jersey Constitution provides, "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  Article I, Paragraph 12, provides, in pertinent part, "cruel and unusual punishments shall not be inflicted."

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  For the reasons stated above with respect to Plaintiff's federal constitutional claims, this Court will exercise its pendent jurisdiction over Plaintiff's state-law claims against Defendant Administrator Mike Power for his alleged detention of Plaintiff in violation of the July 27, 2007, order. All other state law claims will be dismissed without prejudice.

18

V.   <u>CONCLUSION</u>

For the reasons set forth above, all claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B), except Plaintiff's claims against Defendant Administrator Mike Power for his alleged detention of Plaintiff in violation of the July 27, 2007, order.  An appropriate order follows.


/s/Susan D. Wigenton
United States District Judge
Dated: September 12, 2007

19