**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID EDWARDS,  :
a/k/a  :
Saynoral Andrew Jackson,  :
: Civil Action No. 07-4121 (ES)
        Plaintiff,  :
:
v.  : **OPINION**
:
T. MICHAEL POWER, et al.,  :
:
        Defendants.  :

**SALAS, DISTRICT JUDGE**

    This matter was opened to the Court by Plaintiff David Edwards, also known as "Saynoral Andrew Jackson" and "James Davis," filing a complaint asserting claims arising out of his allegations that he was detained in custody beyond the expiration of his term of imprisonment. By Opinion and Order entered September 12, 2007, this Court dismissed certain defendants and claims and permitted Plaintiffs' other claims to proceed against Defendant T. Michael Power. (D.E. Nos. 2, 3).

    By Order entered June 4, 2010, (D.E. No. 61), this Court granted Plaintiff leave to file an Amended Complaint, (D.E. No. 62). The Amended Complaint asserts the following claims against East Jersey State Prison Administrator T. Michael Power and Classification Supervisor Nicole Dudas[1] ("Defendants"):

---

[1] Counsel for Defendant Nicole Dudas has advised the Court that Ms. Dudas was improperly pled as "Nicole Dos Santos." She will be referred to herein by her proper surname, "Dudas."

1

> 1st Cause of Action - Defendants T. Michael Power and Nicole Dos Santos, violated plaintiff's due process rights and subjected him to crule [sic] and ususal [sic] punishment, in violation of the federal and state Constitutional (U.S. Const's 8 & 14th amends; N.J. Const's Art I, par 1&12), by continuing to confine him after his 1999 sentence expired.
>
> 2nd Cause of Action - Defendants T. Michael Power and Nicole Dos Santos, violated plaintiff's due process rights as well as those of the 6th amend, thus subjecting him to crule [sic] and unusual punishment (U.S. Const's 6, 8&14th amends; N.J. Const's Art I, par 1&12) when defendants violated the terms of plaintiff's plea agreement, after Judge McNeill issued his July 2007 writ and order.
>
> 3rd Cause of Action - T. Michael Power and Nicole Dos santos violated plaintiff's due process rights and subjected him to crule [sic] and unusual punishment, contrary to the Federal and State Constitutions (U.S. Const's 8&14th amends; N.J. Const's Art I, pars 1&12), when defendants established policies and/or procedures resulting in plaintiff being imprisoned beyond his maximum sentence, after Judge McNeill's July 2007 writ and Order; and/or defendants allowing prison policies to superceed [sic] Judge McNeill's July 2007 Order.

(D.E. No. 62, Am. Compl. 7-8).[2] The Amended Complaint states that the claims are asserted against Defendants in both their personal and official capacities.

On December 1, 2011, Defendants filed the instant motion for summary judgment. (D.E. No. 124, Defs.' Summ. J. Mot.). Plaintiff subsequently filed an opposition brief. (D.E. Nos. 125, 126, Pl.'s Opp'n). On November 19, 2012, this Court held oral argument on the motion for

---

[2] The Sixth Amendment to the United States Constitution provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. Plaintiff has failed to assert any facts suggesting a claim under the Sixth Amendment.

2

summary judgment and ordered additional briefing. (D.E. Nos. 134, 135). Thereafter, both parties submitted supplemental briefing. (D.E. Nos. 137, 140, 141).

## I. BACKGROUND

The following facts are undisputed.

On or about April 16, 1999, Plaintiff was sentenced to a ten-year prison term in New Jersey Superior Court. (D.E. No. 124-2, Defs.' Statement of Undisputed Material Facts ("Defs.' Facts") ¶ 3). Plaintiff received 183 days of jail credit for time spent in custody. (Id.). On January 24, 2004, while serving his ten-year sentence, Plaintiff escaped from a halfway house. (Id. ¶ 4). Plaintiff was later apprehended in New York on an unrelated matter and sentenced to a three-year term of imprisonment. (Id.). On August 30, 2004, while serving the New York sentence, Plaintiff pleaded guilty to the New Jersey escape charge. (Id. ¶ 5). At the plea hearing, the assistant prosecutor advised the court that, as part of the plea agreement, the State would recommend that Plaintiff be sentenced to three years of incarceration concurrent to the 1999 New Jersey sentence and the 2004 New York sentence that Plaintiff was currently serving. (Id. ¶ 6). On October 28, 2004, the judge sentenced Plaintiff to a term of three years of incarceration concurrent to the New Jersey and New York sentences. (Id. ¶¶ 7, 8). Plaintiff was awarded fifty-nine days of jail credit for the period from August 30, 2004 to October 27, 2004. (Id. ¶ 8). Plaintiff remained in the custody of New York until 2006. (Id. ¶ 9).

On March 15, 2006, Plaintiff was paroled by New York and returned to the custody of the New Jersey Department of Corrections to finish serving his 1999 sentence. (Id.). At that time, the New Jersey Department of Corrections calculated Plaintiff's sentence and determined that his maximum release date was January 13, 2008. (Id. ¶ 10). This calculation did not award Plaintiff

credit against the 1999 New Jersey sentence for the time he served in the custody of New York authorities. (D.E. No. 128, Pl.'s Statement of Undisputed Facts ¶ 7). Plaintiff pursued administrative grievances and wrote several letters challenging the calculation of his sentence to Defendant Power and Administrative Analyst Cindy Ford, among others.[3] (*Id.*). Thereafter, Plaintiff appealed the sentence calculation to the Superior Court of New Jersey, Appellate Division, which issued a decision on March 14, 2007. (Defs.' Facts ¶ 11; *see also Davis v. Dep't of Corr.*, 2007 WL 750365 (N.J. Super. Ct. App. Div. Mar. 14, 2007)). The Appellate Division found that the Department of Corrections had correctly calculated Plaintiff's sentence based on the plain language of the judgments of conviction. *Davis*, 2007 WL 750365, at *4. However, the Appellate Division went on to state that its decision was "not meant to preclude [Plaintiff] from seeking relief in the trial court . . . based on his claim that it was his understanding when he entered his plea that the time served in New York would be applied not only to his 2004 sentence but also to his 1999 sentence." *Id.*

Following the suggestion of the Appellate Division, Plaintiff returned to the trial court. In an order dated July 30, 2007, the trial court awarded Plaintiff additional jail credit from August

---

[3] The Declaration of Defendant Dudas contains an April 9, 2006 letter from Plaintiff to Commissioner Devon Brown complaining that Plaintiff was being held beyond his maximum sentence. (D.E. No. 124-3, Defs.' Summ. J. Motion, Decl. of Nicole Dudas ("Dudas Decl."), Ex. I). The response to this letter, supporting the Department of Corrections' calculation, was copied to the Classification Department and Administrator's Office at the Central Reception and Assignment Facility, where Plaintiff was then detained. (Dudas Decl., Ex. J). A second response, again supporting the Department of Corrections' calculation, was copied to the Administrator's Office and Classification Department of East Jersey State Prison, where Plaintiff was then confined. (Dudas Decl., Ex. L). Attached as Exhibit M to the Declaration of Defendant Dudas are Plaintiff's May and June 2006 institutional grievance forms challenging the calculation of his sentence and asserting that he was being detained beyond the end of his maximum term; the signatures on the responses to the grievances are not legible. (Dudas Decl., Ex. M).

4

30, 2004 to March 15, 2006, totaling 562 days.[4]   (Defs.' Facts ¶ 14).   In pertinent part, the Order reads:

> This matter [having] come before the Court by James Davis, for credits and for enforcement of a plea agreement entered into before this court on August 30, 2004. The Court having considered defendants moving papers and legal briefs, the briefs of counsel for the defense and prosecution, the transcripts of the guilty plea entered on August 30, 2004 the sentence on October 22, 2004. The plea form signed August 30, 2004, the Appellate opinion, James Davis vs. Department of Corrections, Docket number A-5023-05-G3 decided March 14, 2007, The Presentence Report prepared in connection with Indictment I431-04-04, the testimony presented and arguments of counsel; and the Court having found that the plea agreement requires that defendant be given jail credit from August 30, 2004 until March 15, 2006 for a total of 562 days and good cause having been shown.
>
> IT IS THEREFORE ORDERED on this 30th day of JULY, 2007, that on Indictment 511-02-99 that defendant be and is hereby awarded additional jail credits from August 30, 2004 to March 15, 2006 totaling 562 days, which is an addition to the 183 days credit previously granted on the original judgment of conviction.
>
> IT IS FURTHER ORDERED that the judgment of conviction on Indictment 511-02-99 be amended accordingly.

(Dudas Decl., Ex. O).

---

[4] Plaintiff repeatedly refers to a writ issued on July 27, 2007, directing his immediate release, and he cites to two documents, which are attached as Exhibits P-1 and P-2 to his opposition brief. (*See, e.g.*, Pl.'s Opp'n 2, 6; D.E. No. 126, Exs. P-1, P-2). These documents are each captioned "SENTENCE SHEET" and have a handwritten notation at the top that reads: "WRIT – NJSP." The following appears in the comments section of each document: "Deft. to receive credits from 8/30/04 - 3/15/06. Return to NJSP - to be released." The documents are signed by Judge McNeill and dated July 27, 2007. Plaintiff states that these writs were delivered to the prison transportation officers who transported Plaintiff to and from the courthouse. It is not clear, however, that either Defendant ever saw them.

In her Supplemental Declaration, Defendant Dudas states that the events thereafter transpired as follows:

> In my capacity as a Supervising Classification Officer, I received Judge McNeill's July 30, 2007 order on August 2, 2007. Upon receiving the order, I reviewed it and determined that it seemed to contain an error. This was based on the fact that the court was awarding Plaintiff additional jail credits on his 1999 sentence for the period from August 30, 2004 to March 15, 2006. This was highly unusual because the court was awarding Plaintiff additional credits for a period of time in which Plaintiff had escaped from the custody of the NJ DOC and committed another crime in New York State, where he was subsequently incarcerated. In addition, the July 30, 2007 order was awarding Plaintiff pre-sentence jail credits, which are only ever awarded by a trial court prior to an inmate's sentencing. Under normal circumstances, in a case like Plaintiff's, the jail credits awarded by Judge McNeill would only be awarded before Plaintiff's NJ DOC sentence began to run in 1999.
>
> During my tenure as a NJ DOC Supervising Classification Officer, I had never encountered a circumstance in which a court issued an inmate additional pre-sentence jail credits for a period in which the inmate had escaped NJ DOC custody and committed other crimes, and after an inmate's sentence had begun to run. Based on my experience, knowledge, and training, I believed the July 30, 2007 order contained an error and the awards were issued erroneously.
>
> Once I concluded that the order contained an error, I contacted Judge McNeill's staff, seeking clarification on the order. As a Supervising Classification Officer, I received training from the NJ DOC on how to process orders issued from courts. Prior to August 2007, I had received training from the NJ DOC regarding processing court orders, which included instruction to seek clarification from the court when we believe a judge may have erred in awarding an inmate credits. As part of my training, I was also instructed to apply a strict reading of an inmate's Judgment of Conviction and to wait for a judge to issue a Judgment of Conviction in instances in which an order may award an inmate duplicative credit. In this instance, the July 30, 2007 order seemed to be awarding Plaintiff pre-sentence jail credits for the period of time in which he had escaped from NJ DOC custody.
>
> Based on the foregoing, I contacted a member of Judge McNeill's staff on August 2, 2007, to seek clarification on the court's July 30, 2007 order. On Thursday, August 2, 2007, the same day I received the order, I contacted Sharon Hyrd, a member of Judge McNeill's staff. Ms. Hyrd indicated that Judge McNeill had not yet signed the amended Judgment of Conviction.
>
> On Monday, August 6, 2007, sometime after 3:30 p.m., I received a faxed copy of the amended Judgment of Conviction awarding Plaintiff the additional 562 credit

6

days, from August 30, 2004 to March 15, 2006, signed by Judge McNeill, via fax. On that date, I also received the letter from Judge McNeill, in which he explained the circumstances surrounding the awarding of pre-sentence jail credits to Plaintiff on his 1999 sentence for the period of time in which he had escaped from NJ DOC custody. Once Judge McNeill amended the Judgment of Conviction and explained that Plaintiff was awarded credits for the August 30, 2004 to March 15, 2006 period despite his status as an escaped inmate, I processed Plaintiff's release in an expedient manner, including convening the Institutional Review Committee on August 7, 2007 to evaluate Plaintiff's file and determine whether he would be recommended for civil commitment upon release and if he was cleared for release, as well as contacting Plaintiff's New York State parole officer to confirm that Plaintiff reached his maximum New York State parole date on March 15, 2007. Following the review of Plaintiff's file and confirming his New York State parole status, Plaintiff was released from NJ DOC custody on August 8, 2007.[5]

(D.E. No. 137-1, Defs.' Supp. Br., Supp. Decl. of Nicole Dudas (paragraph numbers and internal citations omitted)).

## II.     DISCUSSION

### A.     Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *See id.* at 324. To meet its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some

---

[5] Plaintiff continues to assert that he was not released until August 9, 2007.

7

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Furthermore, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

**B. Analysis**

As an initial matter, the damages claims against Defendants in their official capacities will be dismissed.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

As a general proposition, a suit by private parties seeking to impose a liability that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states as well as their departments and agencies from suit in federal court regardless of the type of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against

8

state officers in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 341-42 (1979). In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64, 70-71 & n.10 (1989); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (holding that the New Jersey Department of Corrections is not a person under § 1983).

For the foregoing reasons, all damages claims against Defendants in their official capacities will be dismissed.

### 1. Eighth Amendment and State Law Claims for Cruel and Unusual Punishment

Plaintiff alleges that Defendants Dudas and Power violated the Eighth Amendment and Article I, Paragraph 12 of the New Jersey Constitution by detaining him past the expiration of his sentence term.

The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishment is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

The Third Circuit has held that imprisonment "beyond one's term" may give rise to a claim for "cruel and unusual punishment" under the Eighth Amendment. *See Sample v. Diecks*, 885 F.2d 1099, 1107-12 (3d Cir. 1989). The Court first held that there could be "no doubt that

imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment." *Id.* at 1108 (citing *Hutto v. Finney*, 437 U.S. 678, 685 (1978); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985)). The Court then proceeded to evaluate the circumstances under which incarceration beyond one's term constitutes "cruel and unusual" punishment:

> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Id.* at 1110. "Because the standard is recklessness, 'prison officials who actually knew of a substantial risk to a prisoner's protected right may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Granberry v. Chairman of Pa. Bd. of Prob. & Parole*, 396 F. App'x 877, 880 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).

Like the Eighth Amendment, Article I, Paragraph 12 of the New Jersey Constitution prohibits the infliction of cruel and unusual punishment. In other contexts, the Supreme Court of New Jersey has held that such claims require an inquiry into "whether the nature of the criticized punishment shocks the general conscience and violates principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense; and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim." *State v. Des Marets*, 92 N.J. 62, 82 (1983). Defendants have not cited any New Jersey cases applying this standard to a claim that a prisoner has been held beyond the expiration of his term of imprisonment, nor has this Court located any.

10

Here, Defendant Dudas acknowledged that she was responsible for calculating Plaintiff's sentence and that she received notice of his receipt of additional jail credits on August 2, 2007. She stated that, based on the highly unusual nature of the awarding of the credits, she believed the trial court's order contained an error. On the same day that she received a copy of the order, Ms. Dudas contacted the judge's chambers to seek clarification. After receiving a copy of the amended Judgment of Conviction and a letter of explanation from Judge McNeill on August 6th, which cleared up any confusion as to the correctness of the awarding of the credits, Ms. Dudas processed Plaintiff's release in an expedient manner. This included convening the Institutional Review Committee on August 7, 2007 to evaluate Plaintiff's file and determine whether he would be recommended for civil commitment upon release, as well as contacting Plaintiff's New York State parole officer to confirm that Plaintiff reached his maximum New York State parole date on March 15, 2007. As soon as those steps were completed, Defendant Power notified the Camden County Prosecutor that Plaintiff was being released and signed Plaintiff's final release order on August 8, 2007.

Based on the undisputed facts, it is clear that Defendants did not "fail[] to act or [take] only ineffectual action under circumstances indicating that [their] response to the problem was a product of deliberate indifference to the prisoner's plight." *See Sample*, 885 F.2d at 1110. While Defendant Dudas was ultimately incorrect in her assessment that the trial judge mistakenly ordered credit for jail time, she did not fail to act or take only ineffectual action. On the day she received the trial court's order, she contacted the judge to seek clarification. Then, on the day she received confirmation from the judge that the awarding of credits was correct, she began the process to ensure that Plaintiff was released in a matter of days. Defendant Power also took swift action to

11

secure Plaintiff's release by contacting the prosecutor and expeditiously signing the release order. Even assuming that Plaintiff is correct that he was released on August 9th, that is only a mere matter of days after Defendants received notice of the trial judge's order, and there is no evidence of any deliberate indifference or ineffectual action by Defendants.

In sum, Defendants were not deliberately indifferent, and their motion for summary judgment on the Eighth Amendment claim will be granted. *See Moore v. Tartler*, 986 F.2d 682, 687 (3d Cir. 1993) ("[T]he undisputed facts show that the parole board officials were attempting to resolve the confusion over the sentencing order and were taking affirmative steps during the five months toward that end. We cannot say that this investigation was so inept or ineffectual that deliberate indifference of the part of the parole board officials may be inferred from the evidence here."); *Calhoun v. N. Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993); *Pittman v. N.J. Dep't of Corr.*, 2013 WL 827856, at *2 (N.J. Super. Ct. App. Div. Mar. 7, 2013).

With respect to Plaintiff's state law claim for cruel and unusual punishment, Defendants' actions and the short period of time that Plaintiff spent in prison beyond his term do not "shock[] the general conscience" or "violate[] principles of fundamental fairness." *See Des Marets*, 92 N.J. at 82. As discussed above, it is clear that Defendants acted immediately upon receiving the notice from the court and undertook the necessary steps to secure Plaintiff's quick release. Defendants' motion for summary judgment on this issue is also granted.

### 2.     Fourteenth Amendment Due Process Claim

Plaintiff asserts that his detention after July 27, 2007 violated his due process rights under the Fourteenth Amendment. In his opposition brief, Plaintiff explains his contentions that Defendants: (a) restricted his access to the prison grievance system by stating that further

administrative challenges to his release date would not be considered, (b) failed to communicate with him regarding the delay in his release, thus preventing him from challenging their actions, and (c) failed to promptly comply with the July 27, 2007 "writ" and the July 30, 2007 order.

The Third Circuit has held that detention beyond one's term may give rise to a claim for deprivation of liberty without due process under the Fourteenth Amendment if "a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest." *Sample*, 885 F.2d at 1114. "When an official authorizes constitutionally inadequate procedures, the official's liability is not negated by a showing that he or she did not intend to deprive the plaintiff of due process of law." *Id.* Rather, "[a]ny state-of-mind requirement of the due process clause is satisfied if the official authorizes a system with the intention that it will operate to deprive persons of life, liberty, or property, whether or not he intends the deprivation to be without due process of law." *Id.* (citations omitted).

Applying the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to determine what process is due a prisoner facing detention beyond his term, the Third Circuit held that "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision." *Sample*, 885 F.2d at 1115; *see also Haygood*, 769 F.2d at 1356 ("[D]ue process in this case required the state to provide Haygood with a meaningful hearing at a meaningful time.").

In this case, there is no evidence to suggest that Defendants were "policymaking" officials. *See Sample*, 885 F.2d at 1114. Moreover, there was clearly a grievance procedure in place that

13

Plaintiff could use to challenge Defendants' failure to release him on July 30th. In fact, Plaintiff utilized that very grievance system to challenge the calculation of his sentence numerous times prior to the Appellate Division's decision and Judge McNeill's decision, and the Department of Corrections addressed his issues. When Plaintiff filed grievances before Judge McNeill's awarding of the jail credit, Plaintiff was not being held past his sentence term. There is nothing in the record to indicate that Plaintiff was deprived of an adequate way to challenge his sentence calculation after Judge McNeill's order. In fact, Petitioner filed such a grievance on August 6, 2007. (D.E. No. 126, Ex. P-14). On August 6th, Defendants Dudas and Power were already taking the necessary steps to confirm and effectuate Plaintiff's release. To the extent Plaintiff alleges that he was unable to file a grievance after July 30th and prior to August 6th because officers refused to give him forms, that argument is belied by the record, as it is clear that Plaintiff had previously filed several complaints and grievances without the form, which were still addressed by officials. (*See* Dudas Decl., Ex. I). Therefore, because Plaintiff had a constitutionally adequate procedure for challenging his sentence and Plaintiff utilized that procedure, the Court finds that Defendants are entitled to summary judgment on Plaintiff's due process claim.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment will be GRANTED. An appropriate order follows.

Dated: October 10, 2014

Esther Salas, U.S.D.J.